| | |
|---|---|
| **DISTRICT COURT OF THE VIRGIN ISLANDS**<br><br>**DIVISION OF ST. CROIX** | |
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**HARLD LARSEN,**<br><br>     **Defendant.**<br>_____ | 1:22-po-00011-EAH |

TO: Daniel H. Huston, Esq., AUSA
   Evan Rikhye, Esq., AUSA
   Harld Larsen, *pro se*

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court for a Bench Trial on July 13, 2022, concerning a March 2022 Violation Notice issued to Defendant Harld Larsen by National Park Service ("NPS") Ranger Travis Herbert at the Buck Island Reef National Monument ("Buck Island"), St. Croix. Larsen was cited for failing to maintain at least a 12-foot minimum distance between his vessel and another vessel, violating a rule issued pursuant to 36 C.F.R. § 1.5(f). The Court concludes that Larsen is not guilty of the violation.

### BACKGROUND

**I. Citation**

On February 7, 2022, NPS Ranger Travis Herbert issued a citation notice to Larsen for violating 36 C.F.R. § 1.5(f)—"rafting vessels." Dkt. No. 1. In the Statement of Probable Cause attached to the violation notice, Herbert averred:

*USA v. Larsen*
1:22-po-00011-EAH
Opinion and Order
Page 2

- On Sunday, February 7, 2022,[1] at approximately 1550 hours, while patrolling Buck Island, Herbert observed a vessel "rafted/tied to another vessel."
- Herbert identified the captain as Larsen, who "failed to maintain his vessel at a (12) feet minimum while being tied off to another vessel" at the location.
- As a result, Herbert issued a citation to Larsen for violating a use or activity restriction pursuant to 36 C.F.R. § 1.5(f).

Dkt. No. 1-2. That regulation provides: "Violating a closure, designation, use or activity restriction or condition, schedule of visiting hours, or public use limit is prohibited." 36 C.F.R. § 1.5(f).[2]

## II. Bench Trial

### A. Government's Case

The Bench Trial took place on July 13, 2022. Ranger Herbert testified for the Government; Bernard "Bully" Bartlette and Clijon "6'5" Hamilton testified for the Defendant.

Herbert testified that, while on patrol with Park Rangers Gabriel Laurencin and Stuart Beaudry at Buck Island on February 6, 2022, he saw several vessels anchored in violation of the rafting rule that required vessels to maintain a 12-foot minimum distance from each other. Herbert concluded that less than 12 feet separated the boats because his patrol boat

---

[1] February 7, 2022 was a Monday. At trial, Ranger Herbert testified that the incident occurred on Sunday, February 6, 2022. The citation also states that the date of the offense was February 6, 2022. Dkt. No. 1.

[2] Congress has delegated regulatory authority to the National Park Service to control visitor use of national parks in order to protect their natural resources. 36 C.F.R. § 1.5(a) (pursuant to 16 U.S.C. §§ 1, 3, 9a). This regulation grants park superintendents the authority to impose restrictions on otherwise permissible activities within the parks. *Id.*

*USA v. Larsen*
1:22-po-00011-EAH
Opinion and Order
Page 3

was 8½ feet wide and could not fit between any of the boats. That constituted a violation of the rules contained in an Administrative Order announced during COVID in June 2020 by former NPS Superintendent Gregory Camacho; although Herbert was not working for NPS at the time, he had been briefed on the rule by Ranger Laurencin who also emailed him the Administrative Order. The Order was admitted into evidence. Govt Ex. 1. Asked how the public was informed of the rule, Herbert responded that the NPS issued a news release/public service announcement in June 2020 (Govt Ex. 2) that was publicized by several media outlets including the Daily News, VI Source, and VI Consortium. The information was also included on the NPS's Buck Island Facebook page. Herbert testified that he did not have direct knowledge of these publication efforts as they took place prior to his employment as a Ranger.

    Herbert further testified that, on February 6th, his patrol vessel activated its emergency lights in order that the five vessels could readjust themselves before the Rangers approached. Two of the vessels did adjust themselves; the Rangers' vessel continued to approach but Larsen's vessel and the one next to him did not move. The Rangers activated their emergency sirens. Herbert asked the captains/operators to step forward and Larsen presented himself. Herbert told Larsen that the Rangers had been talking to "these guys" over several weeks about the 12-foot/rafting rule and that was why Larsen was now receiving a citation, although Herbert stated that he had never before spoken to Larsen about the rule. Larsen asked how he could be issued a citation if he hadn't been given a warning

but provided the requested documents. Herbert prepared the citation and handed it to Larsen.

### B. Defendant's Case

Larsen called Bernard Bartlette, who testified that, on February 6, 2022, he anchored his boat at Buck Island; after Larsen arrived, he anchored next to Bartlette. Larsen told Bartlette that he was experiencing a problem with his back anchor and asked if he could tie his boat to Bartlette's vessel. Once the back anchor issue was resolved, Larsen removed the rope connecting their vessels. Bartlette received a warning ticket and Larsen received a ticket. Clijon Hamilton testified that, when he arrived at Buck Island on February 6, 2022, Larsen was anchored and was not rafting his vessel.

In closing, the Government argued that this was a straightforward case: whether the vessels were tied or untied together, the issue was that they violated the 12-foot rule, which was the basis of the violation. Larsen responded that he was tied to another vessel out of necessity, in order to secure his back anchor, and should not have been given a citation. Larsen also moved to dismiss the violation, arguing that the Government's case was based on hearsay and that the Government had no body cam footage. The Court deferred ruling on the motion.

The Government contended that the rule was issued in 2020 and was communicated to the public through the press release and posting on the NPS Facebook page, and that distance rules were not unknown during the pandemic. The Court indicated that many of

those rules had been modified, to which the Government responded that the 12-foot rule had not been modified in February of 2022.

## DISCUSSION

The Court concludes that Larsen is not guilty of the charged violation.

### III.     The Regulatory Landscape

Congress has delegated regulatory authority to the National Park Service to control visitor use of national parks in order to protect their natural resources. 36 C.F.R. § 1.5(a). This regulation grants park superintendents the authority—and allows them the flexibility—to impose restrictions on otherwise permissible activities within the parks. *Id.* The regulation is concerned with the specific and sometimes transient needs of individual parks and provides the means for tailoring the use of a given park to the particular circumstances of that park. *United States v. Lofton*, 233 F.3d 313, 317 (4th Cir. 2000). Violating a closure, designation, use, or activity restriction or condition, or public use limit, is prohibited. 36 C.F.R. § 1.5(f).[3]

Section 1.5(e) provides that, if the Superintendent exercises authority under 1.5(a), the public must be informed of those use or activity restrictions or conditions "in accordance

---

[3] A violation of § 1.5 may subject a person to the following sanctions:
> A person convicted of violating a provision of the regulations contained in parts 1 through 7. . . of this chapter shall be subject to the criminal penalties provided under 18 U.S.C. § 1865 [i.e. imprisoned not more than 6 months, fined under this title or both].

36 C.F.R. § 1.3.

with § 1.7 of this chapter." 36 C.F.R. § 1.5(e). This provision, entitled "Public notice," contains two sections: § 1.7(a) provides examples of how notice of these new rules to the general public must be properly given (when the rules are promulgated), and § 1.7(b) sets forth how the public may be on notice that the rules have been updated. Section 1.7 provides:

> (a) Whenever the authority of § 1.5(a) is invoked to restrict or control a public use or activity, to relax or revoke an existing restriction or control, to designate all or a portion of a park area as open or closed, or to require a permit to implement a public use limit, the public shall be notified by one or more of the following methods:
>   (1) Signs posted at conspicuous locations, such as normal points of entry and reasonable intervals along the boundary of the affected park locale.
>   (2) Maps available in the office of the superintendent and other places convenient to the public.
>   (3) Publication in a newspaper of general circulation in the affected area.
>   (4) Other appropriate methods, such as the removal of closure signs, use of electronic media, park brochures, maps and handouts.
> (b) In addition to the above-described notification procedures, the superintendent shall compile in writing all the designations, closures, permit requirements and other restrictions imposed under discretionary authority. This compilation shall be updated annually and made available to the public upon request.

36 C.F.R. § 1.7.

### IV. Violation of the Provision; Notice

Regulation 1.5(a) lacks an explicit mental state requirement. Violations of such "general intent" provisions call for proof of knowledge and voluntariness. *See* 21 Am. Jur. 2d Criminal Law §§ 116, 117, 119 (2022). In a related case, which involved the same Rangers—Beaudry and Laurencin—issuing a violation notice to another boater on March 13, 2022 for violating the 12-foot minimum distance at Buck Island, pursuant to 36 C.F.R. § 1.5(f), the

Government asserted that, in order to find the defendant guilty, it had to show that the defendant "knowingly failed to maintain a minimum distance of 12 feet between his boat and other boat [sic] at the Buck Island Reef National Monument." *United States v. Ritter*, 22-po-00007, 2022 WL 2904472, at *4 (D.V.I. July 22, 2022). The Court adopted the Government's position that a violation of § 1.5(f) must be "knowing"—defined as "an act . . . done purposely and deliberately, and not because of accident, mistake, negligence, good faith or other innocent reason." *United States v. Clendinen*, 699 F. App'x 109, 114 (3d Cir. 2017) (approving V.I. district court jury instruction defining 'knowingly'). was apt. Thus, the elements of the 12-foot distance requirement are that a defendant (1) failed to maintain a minimum distance of 12 feet between his boat and another boat and that (2) he did so knowingly.

    Here, while notice is not an element of the violation, reading regulation sections 1.5 and 1.7 together, it is clear that proper notice of the rules promulgated under § 1.5(a) is mandatory and must be given by NPS in order for the rules to be effective and subject to enforcement. This is understandable because these kinds of discretionary rules are generally transitory, promulgated to respond to certain conditions, and do not follow the normal route of statutory approval by Congress or the regulatory route of being published in the Federal Register. *See United States v. McGaughey*, 977 F.2d 1067, 1074 (7th Cir. 1992) ("Just as everyone is charged with knowledge of United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal

*USA v. Larsen*
1:22-po-00011-EAH
Opinion and Order
Page 8

notice of their contents."); *see also Higashi v. United States*, 225 F.3d 1343, (Fed. Cir. 2000) (publication in the Federal Register provides legal notice "regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance.") (internal quotation marks omitted).

The Government produced evidence that then-Superintendent Camacho promulgated Rules for Buck Island on June 10, 2020, given that Buck Island would be formally reopening following closures occasioned by COVID-19, but with certain restrictions and public use limits. Govt Ex. 1. The Administrative Order included a reference to the 12-foot rule for maintaining minimum distance between boats at Buck Island, as follows:

> Restrictions and Public Use Limits: Under the authority provided to the Superintendent in 36 CFR [1.5 and 13.50] the following activities are restricted in Buck Island Reef National Monument effective immediately, until further notice:
> * * *
> - Maintain distance between vessels at twelve (12) feet minimum. Vessels cannot be tied or 'rafted' together.

*Id.* The Order stated that it was "effective June 10, 2020 and w[ould] remain in effect until further notice." *Id.* The Government also produced a copy of an NPS News Release, entitled "Buck Island National Monument Safety and Summer Operations," dated June 19, 2020, that provided "No rafting of vessels; maintain distance at least twelve (12) feet between vessels" as one of 13 bullet points listing rules that applied to Buck Island. Govt Ex. 2.

Considering the limited evidence that the Government sought to have admitted, and which was admitted, regarding the NPS's efforts to comply with §§ 1.5 and 1.7, the Court will

*USA v. Larsen*
1:22-po-00011-EAH
Opinion and Order
Page 9

presume that: (1) the NPS news release, Govt Ex. 2, was published in some local newspapers and online publications, as testified to by Herbert—although the Government offered no copies of those publications as evidence—and (2) those publications referred to the 12-foot requirement. The Court will also presume that these minimal efforts to make the public aware of the new 12-foot distance rule satisfied the notice requirement under 36 C.F.R. § 1.7(a).

However, the Government provided absolutely no evidence showing that it had complied with § 1.7(b) by compiling these restrictions in writing and that they were updated annually, which would show that they were still in effect after 2020. As a result, the Court concludes that members of the public did not have sufficient notice of the rule in February 2022 when Larsen was ticketed. They could have reasonably concluded from the Administrative Order's language that NPS had reassessed or modified the 12-foot rule, or that it no longer applied as the pandemic started to recede. *See* Superintendent's June 2020 Order, Govt Ex. 1 ("The effectiveness of this order will be assessed on an ongoing basis and will be modified or removed when conditions warrant."). Thus, even if Larsen was aware of the rule in 2020, no evidence was offered, much less admitted, to show that the rule was updated and still in effect in February 2022.

Consequently, the Government has failed to meet its burden and prove beyond a reasonable doubt that Larsen is guilty of the 12-foot violation under 36 C.F.R. S 1.5(f), and therefore, Larsen must be found not guilty.

Case: 1:22-po-00011-EAH   Document #: 11   Filed: 08/10/22   Page 10 of 10

*USA v. Larsen*
1:22-po-00011-EAH
Opinion and Order
Page 10

## CONCLUSION

Accordingly, for the reasons stated, the Court finds Defendant Harld Larsen **NOT GUILTY** of violating a closure, designation, use or activity restriction or condition pursuant to 36 C.F.R. § 1.5(f).

The Court **DENIES** Larsen's motion to dismiss as moot.

The Clerk of Court shall send a copy of this Order to the *pro se* Defendant.

ENTER:

Dated: August 10, 2022

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE